UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHAD S. WILLIAMS,<br><br>Plaintiff,<br><br>-against-<br><br>TODD BAXTER, Monroe County Sheriff; MATT VANDUZEE, Superintendent of the Monroe County Jail; CAPTAIN CHRISTOPHER SHELLARD; DEPUTY MICHAEL BITTERMAN; DEPUTY JACOB HOYT; DEPUTY EMMET LAWLER; DEPUTY DAVID RYDERS; CORPORAL SHAUN FENNESSY,<br><br>Defendants. | **16-cv-00115 (LJV)(HKS)**<br><br>**THIRD AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, by his attorneys, ROTH & ROTH, LLP and EASTON THOMPSON KASPAREK SHIFFRIN LLP, complaining of the defendants, respectfully allege as follows:

## I.     PRELIMINARY STATEMENT

1.      This is a civil rights action seeking damages for Defendants' violations of Plaintiff Chad Williams' civil rights on April 10, 2019 under the 42 U.S.C. § 1983 ("Section 1983"), and State common law.

2.      On April 10, 2019, Mr. Williams was incarcerated at the Monroe County Jail, when he was brutally beaten by Defendants BRETT KIRKPATRICK and DAVID GERTIN in retaliation for him not demonstrating the level of deference and subservience they subjectively expected him to show them. Plaintiff's perceived disrespect was due to his disability.

3.      At not time prior to the force used against him was Mr. Williams objectively threatening to BITTERMAN or HOYT in any way.

4.      The force used against Mr. Williams was malicious and sadistic, unreasonable under the circumstances, and shocking to the conscious.

1

## II.     PARTIES

5.      Plaintiff CHAD WILLIAMS is a Citizen of the United States and is a qualified individual with a disability under federal law.

6.      Defendant TODD BAXTER ("Sheriff Baxter" or "BAXTER") was, at all times relevant herein, the duly elected Sheriff of the County of Monroe. At all relevant times, Defendant BAXTER was acting within the scope of his employment and under color of state law. He is sued in his individual and official capacity.

7.      Defendant MATT VANDUZEE ("Superintendent Vanduzee" or "VANDUZEE") was, at all times relevant herein, the superintendent of the Monroe County Jail. At all relevant times, Defendant VANDUZEE was acting within the scope of his employment and under color of state law. He is sued in his individual and official capacity.

8.      CAPTAIN CHRISTOPHER SHELLARD; DEPUTY MICHAEL BITTERMAN; DEPUTY JACOB HOYT; DEPUTY EMMET LAWLER; DEPUTY DAVID RYDERS; CORPORAL SHAUN FENNESSY, were, at all times relevant to this Complaint, employees of the Monroe County Sheriff's Office ("MCSO"), assigned to the Jail Bureau. At all relevant times, these defendants were acting within the scope of their employment with the County and under Sheriff BAXTER and Superintendent VANDUZEE, and acting under color of state law. They are sued in their individual capacities. They are referred to collectively as "the Jail Deputies."

9.      BAXTER is responsible for the training, supervision and discipline of the Defendant Sheriff's Deputies under state law.

10.      Upon information and belief, BAXTER delegated some of his responsibility for the training, supervision and discipline of the Jail Deputies to VANDUZEE.

### III.  JURISDICTION AND VENUE

11.     This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, and the Fourth and

Fourteenth Amendments to the United States Constitution, and the laws of the State of New

York. Jurisdiction is conferred upon this court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the

aforementioned statutory and constitutional provisions.

12.     Venue is proper for the United States District Court for the Western District of

New York, pursuant to 28 U.S.C. § 1391(a), (b) and (c) and § 1402(b) because the claims arose

in this district.

### IV.  FACTUAL ALLEGATIONS

**A.  Facts Common to All Causes of Action**

13.     On April 10, 2019, Plaintiff was incarcerated at the Monroe County Jail.

14.     On April 10, 2019, Plaintiff was 47 years old and he suffered from asthma and a

heart condition.

15.     By way of background, Plaintiff had been incarcerated at the Monroe County Jail

in 2015 and was known to several of the defendants, including Captain Shellard.

16.     In 2015, Captain Shellard allegedly encouraged inmates to assault plaintiff, which

led to plaintiff filing a lawsuit.

17.     After filing the lawsuit related to the 2015 assault, Shellard told plaintiff there

would be retaliation against him for filing the lawsuit.

18.     After he came into custody in 2019, Captain Shellard plotted to have Plaintiff

assaulted by other jail deputies.

19.     After he came into custody in 2019, one or more jail deputies informed Mr. Williams that Captain Shellard was plotting to have Plaintiff assaulted by other jail deputies.

20.     After he came into custody in 2019, Vanduzee and Baxter were informed about this plot, but failed to take any steps to protect Plaintiff from being attacked.

21.     Mr. Williams wrote a letter to the judge presiding over the lawsuit related to the 2015 assault to inform the Court of the alleged plot to have him attacked, and to ask for help and/or protection, such as relocating him to a different facility.

22.     The Monroe County Jail reads all outgoing mail, and, upon information and belief, jail deputies read Mr. Williams' letter to the Court requesting that it intervene to have him transferred to a different facility to protect him against the alleged plot by Capatain Shellard to have him attacked other jail deputies.

23.     Upon information and belief, jail policy requires that BAXTER and VANDUZEE be informed of any allegations by an incarcerated person that a staff member has assaulted them or is planning to have them attacked by other incarcerated persons or deputies.

24.     Upon information and belief, BAXTER and VANDUZEE were informed of Mr. Williams' allegations that Captain Shellard was planning to have him attacked after the deputy who screened his outgoing mail to the Court read the allegations against Captain Shellard.

25.     Even though they were, upon information and belief, informed of Captain Shellard's plot to have Mr. Williams attacked by other deputies, BAXTER and VANDUZEE failed to take any actions to stop and or prevent the assault.

26.     Thereafter, on April 10, 2019, Mr. Williams was escorted by Hoyt from his housing area to the nurse's office in the Rec Annex for a medical appointment for his asthma.

4

27.     While walking down a hallway in the Rec Annex towards the nurse's office, Mr. Williams briefly stopped to say hi to another incarcerated person who was in the attorney room.

28.     Hoyt placed his hands on Mr. Williams' back and pushed him from behind, and ordered Mr. Williams to move along.

29.     Mr. Williams protested and told Hoyt he did not need to physically touch him, and said he could have just asked him to move along.

30.     Hoyt responded by threating Mr. Williams and telling him to move along.

31.     Mr. Williams complied with Hoyt's order and continued walking toward the nurse's station.

32.     Bitterman heard Mr. Williams and Hoyt's conversation and entered the hallway to help Hoyt escort Mr. Williams to the nurse's office.

33.     Hoyt and Mr. Williams continued to converse as they exited the hallway and entered the Rec Annex.

34.     Hoyt again threatened Mr. Williams after they entered the Rec Annex and were standing outside of the nurse's office.

35.     Mr. Williams commented to Hoyt that he had a "Napoleon complex" and that is why he pushed him in the back when he could have just asked Mr. Williams to move along.

36.     Hoyt then ordered Mr. Williams to enter the nurse's office, stating, "hurry up and take your fucking ass in there."

37.     Mr. Williams complied with Hoyt's order and entered the nurse's office.

38.     When Mr. Williams entered the office, his back was towards Bitterman and Hoyt.

39.     After he entered the nurse's office, while his back was to Bitterman and Hoyt, without warning or provocation, Bitterman seized Mr. Williams from behind.

40.     When Bitterman seized Mr. Williams, Mr. Williams had just complied with Hoyt's order to enter the office.

41.     When Bitterman seized Mr. Williams, Mr. Williams had not done or said anything that provided him with an objectively reasonable basis to seize Mr. Williams or use any force against him. Indeed, Mr. Williams had just complied with Hoyt's order to enter the nurse's office.

42.     As Bitterman seized Mr. Williams, he stated, "you've got a big fucking mouth, you know that?"

43.      Upon information and belief, Bitterman used force against Mr. Williams because he did not display the degree of deference and subservience Bitterman subjectively expected from him.

44.     Upon information and belief, Bitterman used force against Mr. Williams because he felt Mr. Williams had disrespected Hoyt.

45.     In retaliation for Plaintiff not displaying the degree of deference and subservience he expected, Bitterman physically seized Plaintiff and slammed his body against the wall, without cause or justification.

46.     Hoyt immediately ran over and also physically seized Mr. Williams, without, cause or justification.

47.     Bitterman and Hoyt then slammed Mr. Williams' body onto the ground, without cause or justification.

48.     Upon information and belief, Mr. Williams' head hit the ground when Bitterman and Hoyt slammed him on the ground, without cause or justification.

6

49.     Several seconds later, numerous additional jail deputies, including Defendants Lawler, Rynders and Fennessy, entered the nurse's office and assaulted Mr. Williams.

50.     After Plaintiff was slammed to the ground, Bitterman, Hoyt and/or Fenessey placed their body weight on his back and legs to hold him down against the ground.

51.     After Plaintiff was slammed to the ground, when he was physically restrained by four Jail Deputies, Bitterman struck Mr. Williams in the leg with a closed fist strike.

52.     After Plaintiff was slammed to the ground, Hoyt held Mr. Williams legs down by applying his full bodyweight on top of Mr. Williams' legs.

53.     After Plaintiff was slammed to the ground, Fennessy held Mr. Williams upper body down by applying his full bodyweight on top of Mr. Williams' upper back.

54.     After Plaintiff was slammed to the ground, Rynders held Mr. Willimas to the ground by putting his hands against Mr. Williams' head and applying his full bodyweight to hold his head down to the ground.

55.     After Plaintiff was slammed to the ground, when he was physically restrained by four Jail Deputies, Lawler repeatedly punched Mr. Williams in the head at least four times, without cause or justification.

56.     None of the other deputies, including Bitterman, Hoyt, Fennessy or Rynders did anything to try and stop or prevent Lawler from repeatedly punching Mr. Williams in the head at least four times, despite having the time and opportunity to do so.

57.     When Lawler repeatedly punched Mr. Williams in the head at least four times, Mr. Williams was being physically controlled on the ground by at least three other deputies.

58.     When Lawler repeatedly punched Mr. Williams in the head at least four times, it was objectively unreasonable to use that level of force considering the totality of the circumstances.

59.     Additionally, after Plaintiff was slammed to the ground, Bitterman, Hoyt, Lawler, Rynder and/or Fenessey repeatedly struck Mr. Williams in the in the lower back, body and legs.

60.     Mr. Williams sustained severe physical injuries as a result of the brutal assault.

61.     The brutal assault was video recorded by the Jail's surveillance cameras.

62.     At no time did Mr. Williams ever physically threaten Hoyt, Bitterman or any of the other deputies.

63.     At no time did Mr. Williams strike any of the deputies or any other person.

64.     The deputies, including Bitterman and Lawler, acted maliciously and sadistically for the very purpose of causing harm to Plaintiff.

65.     The deputies, including Bitterman and Lawler, maliciously and sadistically attacked Plaintiff in retaliation for Plaintiff not displaying the degree of deference and subservience that they subjectively expected from him.

66.     To cover up their unlawful use of force against him, Bitterman, Hoyt and the other defendants falsified their accounts of the interaction with Mr. Williams in official Sheriff's Office paperwork.

67.     For example, in his Subject Management Resistance Report, Hoyt claimed that after Mr. Williams entered the nurse's office, "Bitterman ordered Williams to turn around and place his hands behind his back to be handcuffed, he refused."

68.     The video of the incident contradicts Hoyt's account and shows that Bitterman immediately seized and used force against Mr. Williams after he entered the nurse's station; and

that even if Bitterman ordered him to put his hands behind his back, he did not provide Mr. Williams the time or opportunity to comply before Bitterman resorted to physically seizing him and using force against him.

69.     To cover up their unlawful use of force against him, Bitterman filed retaliatory criminal charges against Mr. Williams, falsely claiming that Mr. Williams had assaulted him.

70.     Upon information and belief, the decision to file criminal charges against Mr. Williams was made by Baxter and/or Vanduzee; and/or they approved and ratified the decision to file criminal charges against Mr. Williams—charging him with felony assault.

71.     The false charges Bitterman filed against Mr. Williams were presented to a grand jury on July 10, 18 and 23, 2019.

72.     Bitterman testified falsely to the grand jury. For example, Bitterman testified that as Mr. Williams entered the medical office, he turned around and began arguing with Hoyt, who told him to sit in the chair. The video of the incident contradicts this account.

73.     Mr. Williams also testified in his own defense before the grand jury.

74.     The grand jury also reviewed the video of the incident.

75.     After hearing testimony from Hoyt, Bitterman, and Mr. Williams, and reviewing the video of the incident, the Grand Jury issued a no bill, dismissing the false charges against Mr. Williams.

76.     After the incident, Plaintiff was placed in segregation, and defendants refused to let the nurse evaluate him for head injuries, despite Lawler admitting that he struck plaintiff in the head multiple times.

77.     Following the incident, Plaintiff had many objective signs of serious physical injury, that lasted more than one month—including severe lower back pain, urinating blood, headaches, and a large welt on the left side of his head.

78.     Nevertheless, due to Baxter and Vanduzee's negligent failure to adequately supervise and the jail, the actions of the defendant Jail Deputies were never investigated or reviewed by any supervisors or Internal Affairs.

79.     Instead, after the incident, the jail held a sham disciplinary hearing, where Mr. Williams was alleged to have "threatened staff and refused staff orders" which allegedly caused the deputies to use force against him.

80.     As a result of being found guilty in the sham disciplinary hearing of failing to immediately comply with staff orders, allegedly causing them to use force against him, Mr. Williams was sentenced to 45 days in "punitive segregation" (i.e. solitary confinement) and fined $25.

81.     Vanduzee reviewed and approved the sham disciplinary proceedings and the penalty imposed on Mr. Williams.

82.     Upon information and belief, Baxter reviewed, approved and ratified the sham disciplinary proceedings and the penalty imposed on Mr. Williams.

83.     Following the incident, Lawler's use of force against Mr. Williams was never reviewed by supervisors or internal affairs, despite him admitting that he punched Mr. Williams in the face while he was restrained on the ground by three other deputies.

**B.   <u>Additional Facts Regarding Baxter and Vanduzee's Deliberate Indifference to Deputies Using Excessive Force and Supervisory Liability</u>**

    **a.   <u>Failure to adequately train regarding use of force.</u>**

84.     Baxter and Vanduzee failed to adequately train deputies about the constitutional limitations on the use of force.

85.     Baxter and Vanduzee train deputies that they are permitted to use physical force if an incarcerated person does not immediately comply with an order.

86.     Baxter and Vanduzee train deputies that they are permitted to use physical force even if there is no objectively reasonable basis to believe that the incarcerated person poses any threat to the deputies or other persons, simply because they did not immediately comply with an order.

87.     Baxter and Vanduzee train deputies that they are permitted to use physical force even if there is no objectively reasonable basis to believe that the incarcerated person poses any threat to the deputies or other persons, when the deputies subjectively believe the incarcerated person did not immediately comply with an order.

88.     Baxter and Vanduzee train deputies that they are permitted to use physical force even if there is no objectively reasonable basis to believe that the incarcerated person poses any threat to the deputies or other persons, when the incarcerated person did not display the degree of deference or subservience they subjectively expected the incarcerated person to show.

89.     Baxter and Vanduzee fail to train their deputies that head strikes should be avoided because they can pose a threat of serious physical injury or death.

90.     Baxter and Vanduzee train deputies that strikes to the head are no different than strikes to the body, despite the fact that strikes to the head pose an increased risk of serious injury or death.

91.     Baxter and Vanduzee do not provide any regular or ongoing in-service training to jail deputies regarding use of force, even though use of force is a constant an ongoing part of job for jail deputies.

92.     Baxter and Vanduzee do not provide any regular or ongoing in-service training to jail deputies regarding use of force, even though it is patently obvious that said training is necessary to ensure that deputies understand the constitutional limitations on the use of force against incarcerated persons.

93.     Baxter and Vanduzee do not provide any regular or ongoing in-service training to jail deputies regarding use of force, even though this incident and numerous other use of force incidents demonstrate that jail deputies do not understand the constitutional limitations on use of force against incarcerated persons.

94.     The failure to provide adequate training to jail deputies on the constitutional limitations on the use of force demonstrates that Baxter and Vanduzee are deliberately indifferent to the widespread and ongoing problem of deputies using excessive and unnecessary force against incarcerated persons, like the plaintiff, Chad Williams.

### b.  **Failure to supervise and discipline Deputies regarding use of force.**

95.     Baxter and Vanduzee fail to adequately supervise and discipline deputies who use excessive force against incarcerated persons.

96.     In particular, Baxter and Vanduzee fail to adequately supervise and discipline deputies who strike incarcerated persons in the face and/or head.

97.     After this incident, where Lawler repeatedly struck Mr. Williams in the head at least four times while he was stabilized, restrained, and under the physical control of three other deputies, Lawler's use of force was never investigated by his supervisors or internal affairs.

98.     After this incident, where Lawler repeatedly struck Mr. Williams in the head at least four times while he was stabilized, restrained, and under the physical control of three other deputies, Lawler was never disciplined in any way or required to undergo any additional training on the use of force against incarcerated persons.

99.     Similarly, on November 25, 2020, Jail Deputy Brett Kirkpatrick brutally assaulted an incarcerated person named Richard Dzionara-Norsen (who suffered from autism spectrum disorder) by punching him in the head approximately four times while he was stabilized and under the control of another deputy.

100.    Like the assault on Mr. Williams, when Kirkpatrick brutally assaulted Mr. Dzionara-Norsen, he posed no threat of physical injury to Kirkpatrick or any other person.

101.    Like the assault on Mr. Williams, Kirkpatrick brutally assaulted Mr. Dzionara-Norsen, because he felt disrespected in that Mr. Dzionara-Norsen did not display the degree of deference and subservience that Kirkpatrick subjectively expected.

102.    Like the assault on Mr. Williams, Kirkpatrick brutally assaulted Mr. Dzionara-Norsen as he was being transported to the nurse's office in the Rec Annex for a mental health appointment.

103.    Like the assault on Mr. Williams, Kirkpatrick's brutal assault of Mr. Dzionara-Norsen was captured by the jail's surveillance cameras.

104.    Like Mr. Williams, as a result of Kirkpatrick brutally assaulting him, Mr. Dzionara-Norsen sustained serious physical injuries.

105.    Specifically, as a result of Kirkpatrick brutally assaulting him, Mr. Dzionara-Norsen sustained facial fractures.

106.    Like Mr. Williams, after Kirkpatrick brutally assaulted Mr. Dzionara-Norsen, the jail held a sham disciplinary hearing, in which his disability was not considered, and where he was found guilty of allegedly being "disrespectful to authority."

107.    As a result of being found "guilty" of being "disrespectful to authority" in the sham disciplinary hearing, Mr. Dzionara-Norsen was sentenced to 20 days in "punitive segregation" (i.e. solitary confinement) and fined $25.

108.    KIRKPATRICK was also subjected to an internal affairs investigation regarding the force he used against Plaintiff.

109.    The internal affairs investigation concluded that KIRKPATRICK was justified in using force against Plaintiff.

110.    In finding that KIRKPATRICK was justified in using force against Plaintiff, internal affairs failed to consider whether KIRKPATRICK's actions were objectively reasonable under the totality of the circumstances.

111.    In finding that KIRKPATRICK was justified in using force against Plaintiff, internal affairs did not consider Plaintiff's disability as part of the totality of the circumstances.

112.    The internal affairs investigation concluded that KIRKPATRICK was justified in using force against Plaintiff, but the amount of force he used was excessive and unjustified.

113.    KIRKPATRICK was only suspended for 20 days and was permitted to use his banked vacation and/or sick time towards the suspension.

114. Upon information and belief, a 20-day suspension is the most severe penalty that any deputy has ever received under the tenure of either Baxter or Vanduzee as a result of using excessive force.

115. In the lawsuit brought by Richard Dzionara-Norsen, Captain Salvatore Amatore testified that he worked in internal affairs for the Sheriff's Department for several years, and a 20-day suspension is the most severe penalty is he could remember the Sheriff ever imposing in response to a finding of excessive force.

116. Captain Amatore testified that there were numerous other use of force incidents he had witnessed and/or reviewed where a deputy's use of force was more severe and/or more unlawful than Kirkpatrick's was against Mr. Dzionara-Norsen; nevertheless, none of those deputies were fired or faced any penalty more severe than a 20-day suspension.

117. However, Captian Amatore testified that deputies have been punished more severely than a 20-day suspension for other and/or different kinds of infractions, just not for excessive force incidents.

118. Baxter and Vanduzee specifically failed to appropriately supervise and discipline Bitterman with respect to use of force.

119. In 2019, Bitterman was involved in at least nine use of force incidents, including the April 10, 2019 use of force against Mr. Williams.

120. Compared to other jail deputies, the nine use of force incidents in 2019 was an unusually high number of force incidents.

121. This unusually high number of force incidents should have indicated to Baxter and Vanduzee that Bitterman required additional training and supervision with respect to using force against inmates and/or de-escalation techniques to avoid using force.

122.     Instead of providing needed additional training, Bitterman's supervisor, Defendant Fennessy, praised Bitterman in his annual evaluation and claimed that every use of force incident was justified and that "he used only the absolute necessary amount of force to control the situation."

123.     A review of the video of this incident demonstrates that Fennessy's statement is inaccurate, as it was unnecessary for Bitterman to use any force against Mr. Williams on April 10, 2019, and he could have controlled the situation without using any force.

124.     Bitterman has never been disciplined in any way as a result of a use of force incident.

125.     Bitterman has never been required to undergo any additional training on use of force as a result of a force incident.

126.     Similarly, as a result of his use of force against Mr. Williams on April 10, 2019, Lawler was not disciplined or required to undergo any additional training.

127.     Lawler was never disciplined or required to undergo any additional training as a result of any use of force incident in the jail throughout his entire career.

128.     Similarly, Hoyt, Rynders and Fennessy have never been disciplined or required to undergo any additional training as a result of any use of force incident throughout their careers.


     **c.**  **Additional facts demonstrating Baxter and Vanduzee's deliberate indifference and failure to protect Mr. Williams and other inmates from a substantial risk of being assaulted by jail deputies.**

129.     As detailed above, Baxter and Vanduzee failed to take reasonable measures to guarantee the safety of the incarcerated persons in their custody.

130.     Baxter and Vanduzee failed to take reasonable measures to protect Mr. Williams and other incarcerated persons from a substantial risk of harm of being assaulted by jail deputies.

131.     Baxter and Vanduzee were deliberately indifferent to the substantial risk of harm that Mr. Williams and other incarcerated persons would be assaulted by jail deputies.

132.     Their deliberate indifference was demonstrated by the above allegations regarding the failure to appropriately train officers on the legal requirements for when they are permitted to use force; the failure to train officers on the particularly risks associated with striking inmates in the head; and the failure to appropriately supervise and discipline officers who use excessive force.

133.     Deliberate indifference is further demonstrated by the apparent pattern of attempting to cover up deputies' unlawful use of force by "blaming the victim" and infracting and/or disciplining the incarcerated person who was the victim of the use of excessive force, like Mr. Williams and Mr. Dzionara-Norsen.

134.     Deliberate indifference is further demonstrated by the apparent pattern of attempting to cover up deputies' unlawful use of force by filing retaliatory criminal charges against the incarcerated person who was the victim of the use of excessive force, as happened here with Mr. Williams.

135.     Baxter and Vanduzee were further deliberately indifferent to the fact that, upon information and belief, a much higher number of use of force incidents occur during the "third platoon" or the 3:00 p.m. to 11:00 p.m. shift in the jail.

136.     The Third Platoon is generally a more undesirable shift, and is generally staffed by younger and more inexperienced deputies.

137.     Upon information and belief, Baxter and Vanduzee were aware of the fact that a much higher number of force incidents occur during the Third Platoon, but took no measures to curb the unusually high number of force incidents during this shift, like ensuring that it was staffed by more experienced officers who were less likely to unnecessarily use force against incarcerated persons.

## V.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:
**Excessive Force**
*Pursuant to 42 U.S.C. § 1983*
**(Against BITTERMAN, HOYT, LAWLER, RYNDERS and FENNESSY)**

138.     All preceding and subsequent paragraphs are incorporated by reference.

139.     Defendants used force against Plaintiff that was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted them.

140.     Defendants used force against Plaintiff that was malicious and sadistic, and applied for the very purpose of causing harm.

141.     LAWLER's use of force, in particular, against Plaintiff shocks the conscious, because Plaintiff was detained and under the control of at least three other deputies when LAWLER punched him at least four times in the head—and Mr. Williams posed no threat to the deputies or anyone else.

142.     Defendants' actions towards Plaintiff constitute excessive force in violation of 4th, 8th and 14th Amendments of the United States Constitution and 42 U.S.C. § 1983.

143.     Plaintiff did not pose any threat of physical harm to Defendants or anyone else when they used force against him.

144.    Any threat perceived by Defendants was unreasonable, as plaintiff never physically threatened any deputy and complied with all of their orders to move along and to enter the nurse's office.

145.    There was no need for Defendants to use any force against Plaintiff.

146.    There was no need for BITTERMAN to physically seize Plaintiff from behind and throw him on the floor.

147.    There was no need for LAWLER to punch Plaintiff in the face four times.

148.    There was no need for Defendants to repeatedly strike Plaintiff after he was restrained on the ground.

149.    The types and levels of force Defendants used against Plaintiff were in contravention of, or inconsistent with, related policies and/or training.

150.    Defendants also failed to provide adequate training and supervision to administrators and deputies with respect to constitutional limits on the use of force and restraint.

151.    Upon information and belief, the Jail Deputies, including BITTERMAN, HOYT, LAWLER, RYNDERS and FENNESSY, used force against Mr. Williams because they were directed to do so by Captain Shellard as part of the plot devised by Capatain Shellard to have Mr. Williams attacked in retaliation for the prior lawsuit Mr. Williams filed against Captain Shellard.

152.    As a result of the acts and omissions of Defendants, Plaintiff was deprived of his federal, state, and/or other legal rights; caused Plaintiff bodily injury; short-term and long-term physical pain, psychological and/or emotional injury, and/or humiliation; exacerbated the symptoms of his mental illness; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

153.    The actions of the Defendants were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

154.    Accordingly, Plaintiff was harmed as a direct result of Defendants' unlawful conduct and is entitled to damages and reasonable attorney's fees and costs in an amount to be determined by the Court.

**SECOND CLAIM FOR RELIEF**
**Failure To Intervene**
*Pursuant to 42 U.S.C. § 1983*
**(Against BITTERMAN, HOYT, RYNDERS and FENNESSY)**

155.    All preceding and subsequent paragraphs are incorporated by reference.

156.    HOYT all had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by BITTERMAN.

157.    HOYT failed to intervene on Plaintiff's behalf despite having had a realistic opportunity to do so.

158.    HOYT failed to intervene on Plaintiff's behalf despite having substantially contributed to the circumstances within which Plaintiff's rights were violated by his affirmative conduct.

159.    As a result of the aforementioned conduct of HOYT, Plaintiff's constitutional rights were violated.

160.    BITTERMAN, HOYT, RYNDERS and FENNESSY all had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by LAWLER.

161.    BITTERMAN, HOYT, RYNDERS and FENNESSY failed to intervene on Plaintiff's behalf despite having had a realistic opportunity to do so.

162.    BITTERMAN, HOYT, RYNDERS and FENNESSY failed to intervene on Plaintiff's behalf despite having substantially contributed to the circumstances within which Plaintiff's rights were violated by his affirmative conduct.

163.    As a result of the aforementioned conduct of BITTERMAN, HOYT, RYNDERS and FENNESSY, Plaintiff's constitutional rights were violated.

164.    Defendants' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

165.    Accordingly, Plaintiff was harmed as a direct result of Defendants' unlawful conduct and is entitled to damages, injunctive relief, and reasonable attorney's fees and costs in an amount to be determined by the Court.

### THIRD CLAIM FOR RELIEF
**Malicious Prosecution**
***Pursuant to 42 U.S.C. § 1983***
**(Against all defendants)**

166.    All preceding and subsequent paragraphs are incorporated by reference.

167.    The defendants, acting individually and in concert, initiated the prosecution of Plaintiff, despite knowing that probable cause did not exist to arrest and prosecute him for any crime.

168.    False and fabricated evidence was given by the defendants to the District Attorney's Office.

169.    Defendants knew or were deliberately and recklessly indifferent to the truth that probable cause did not exist to prosecute Plaintiff.

170.    There was actual malice and an absence of probable cause for the criminal proceeding against Plaintiff and for the charges for which he was prosecuted.

171.    On or about July 23, 2019, the prosecution terminated in Plaintiff's favor without a conviction.

172.    As a direct and proximate result of the defendants' actions, Plaintiff was wrongly prosecuted for approximately three months and suffered the other grievous and continuing injuries and damages as set forth above.

173.    As a result of the aforementioned conduct of defendants, Plaintiff's constitutional rights were violated.

174.    Defendants' actions were willful, malicious, oppressive, and/or reckless, and were of such a nature that punitive damages should be imposed.

175.    Accordingly, Plaintiff was harmed as a direct result of Defendants' unlawful conduct and is entitled to damages, injunctive relief, and reasonable attorney's fees and costs in an amount to be determined by the Court.

### FOURTH CLAIM FOR RELIEF
**First Amendment Retaliation**
***Pursuant to 42 U.S.C. § 1983***
**(Against all defendants)**

176.    Plaintiff re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

177.    In committing the acts and omissions complained of herein, Defendants acted under color of state law—individually, in concert, and through a conspiracy—to deprive Plaintiff of the rights protected by the First Amendment to the United States Constitution.

178.    Defendants (a) retaliated against Plaintiff for engaging in speech and/or conduct protected by the First Amendment, and (b) imposed restrictions on such protected speech and/or conduct that violated Plaintiff's First Amendment rights, including, but not limited to, subjecting Plaintiff to excessive force, selectively enforcing laws and regulations against Plaintiff,

maliciously prosecuting plaintiff, and otherwise violating Plaintiff's rights and engaging in the acts and omissions complained of herein.

179.    Defendants engaged in those and other acts and omissions complained of herein in retaliation for Plaintiff's protected speech and/or conduct, in complaining about the alleged plot by Captain Shellard to have him assaulted by other jail deputies.

180.    As a result of the foregoing, Plaintiff suffered injuries and damages.

181.    The unlawful conduct of the individual defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

182.    Defendants' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

183.    Accordingly, Plaintiff was harmed as a direct result of Defendants' unlawful conduct and is entitled to damages, injunctive relief, and reasonable attorney's fees and costs in an amount to be determined by the Court.

## FIFTH CLAIM FOR RELIEF
### Conspiracy to Use Excessive Force
### *Pursuant to 42 U.S.C. § 1983*
### (Against Shellard and Jail Deputies)

184.    All preceding and subsequent paragraphs are incorporated by reference.

185.    There was an agreement between Shellard and the other Jail Deputies to assault Mr. Williams, in violation of his constitutional rights.

186.    Pursuant to that agreement, on April 10, 2019, the Jail Deputies used force against Mr. Williams without justification or lawful purpose, that goal causing damages.

187.    As a result of the aforementioned conduct of SHELLARD, BITTERMAN, HOYT, RYNDERS and FENNESSY, Plaintiff's constitutional rights were violated.

188.    Defendants' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

189.    Accordingly, Plaintiff was harmed as a direct result of Defendants' unlawful conduct and is entitled to damages, injunctive relief, and reasonable attorney's fees and costs in an amount to be determined by the Court.

## SIXTH CLAIM FOR RELIEF
### Conspiracy to Cover Up Use Excessive Force
*Pursuant to 42 U.S.C. § 1983*
**(Against all defendants)**

190.    All preceding and subsequent paragraphs are incorporated by reference.

191.    After Mr. Williams was assaulted, there was an agreement between the defendants to file criminal charges against Mr. Williams, falsely charging him with felony assault on BITTERMAN, in order to cover up their unlawful and excessive use of force against Mr. Williams.

192.    Pursuant to that agreement, on or about May 17, 2019, the defendants caused a felony complaint to be filed against Mr. Williams, initiating his malicious prosecution for assaulting BITTERMAN.

193.    Pursuant to this agreement, BITTERMAN and HOYT conspired to provide false testimony against Mr. Williams at the Grand Jury.

194.    As a result of the aforementioned conduct, Plaintiff's constitutional rights were violated.

195.    Defendants' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

196.    Accordingly, Plaintiff was harmed as a direct result of Defendants' unlawful conduct and is entitled to damages, injunctive relief, and reasonable attorney's fees and costs in an amount to be determined by the Court.

### SEVENTH CLAIM FOR RELIEF
**Supervisory Liability**
***Pursuant to 42 U.S.C. § 1983***
**(Against BAXTER and VANDUZEE)**

197.    All preceding and subsequent paragraphs are incorporated by reference.

198.    BAXTER and VANDUZEE personally caused defendants' injuries by being deliberately or consciously indifferent to the rights of others in failing to properly supervise, train, and discipline his subordinate employees.

199.    BAXTER and VANDUZEE were negligent in the training, supervision and discipline of the Defendant Sheriff's Deputies, who were provided, upon information and belief, incorrect training on the constitutional limitations regarding use of force against incarcerated persons, as detailed herein; or the training they were provided was inadequate.

200.    BAXTER and VANDUZEE had a duty to ensure that the Jail Deputies were properly trained on the constitutional limitations regarding use of force against incarcerated persons, and that the failure to immediately comply with a verbal demand was an insufficient reason to use substantial force against an incarcerated person.

201.    BAXTER and VANDUZEE knew or should have known that the training they provided was inadequate.

202.    Plaintiff's injuries were a direct and proximate result of BAXTER and VANDUZEE failing to adequately train the Jail Deputies regarding the constitutional limitations on use of force against incarcerated persons.

203.    BAXTER and VANDUZEE had a duty to ensure that the Jail Deputies were properly supervised regarding the lawful amount of force that is permitted to be used against incarcerated persons, and that Jail Deputies are properly disciplined if they use unlawful and/or excessive force.

204.    BAXTER and VANDUZEE failed to adequately supervise and discipline Jail Deputies who use force against detainees because they subjectively felt disrespected, and or did not observe the level of deference and subservience from the incarcerated person that they subjectively expected.

205.    BAXTER and VANDUZEE knew or should have known that the supervision and discipline provided was inadequate, as, upon information and belief, Jail Deputies often use force against detainees because they subjectively feel disrespected but face no consequences when they do so.

206.    BAXTER and VANDUZEE breached their duty to keep Plaintiff safe by failing to provide adequate training and supervision to the Jail Deputies regarding the fact that they are not permitted to use force against detainees because they subjectively feel disrespected.

207.    The individual Sheriff's Deputy defendants used force against Plaintiff because they subjectively felt disrespected.

208.    BAXTER and VANDUZEE held a sham disciplinary hearing, in which Plaintiff was found guilty of failing to immediately comply with orders, which resulted in force used Bitterman, Hoyt, Lawler, Rynders and Fennessy. In short, Plaintiff was disciplined because he allegedly caused defendants to use force against him because they perceived his actions as being "disrespectful".

209.    Plaintiff's injuries were a direct and proximate result of BAXTER and

VANDUZEE failing to adequately train, supervise and discipline his Jail Deputies, including

regarding policing individuals who were not a danger to themselves or others, but that Jail

Deputies perceived as being "disrespectful", or otherwise not displaying the degree of deference

and subservience they subjectively expected from the incarcerated person.

210.    Accordingly, Plaintiff was harmed as a direct result of Defendants' unlawful

conduct and is entitled to damages, injunctive relief, and reasonable attorney's fees and costs in

an amount to be determined by the Court.

### EIGHTH CLAIM FOR RELIEF
**Failure to Protect**
***Pursuant to 42 U.S.C. § 1983***
**(Against BAXTER and VANDUZEE)**

211.    All preceding and subsequent paragraphs are incorporated by reference.

212.    As detailed herein, the conditions within the Monroe County Jail were sufficiently

serious to constitute objective deprivations of Mr. Williams' right to due process.

213.    As detailed herein, the conditions within the Monroe County Jail posed an

unreasonable risk of serious damage to Plaintiff's health, as he faced an unreasonable risk of

being subjected to excessive force by Jail Deputies.

214.    As detailed herein, BAXTER and VANDUZEE acted intentionally or recklessly

failed to act with reasonable care to mitigate the substantial risk that Mr. Williams and other

incarcerated persons would be subjected to excessive force by Jail Deputies.

215.    Specifically, as detailed herein, BAXTER and VANDUZEE knew or should have

known that their training and policies that permitted Jail Deputies to use force against

incarcerated persons who did not immediately comply with a deputy's order did not comply with

the constitutional limitations on the use of force against incarcerated persons

27

216.     Specifically, as detailed herein, BAXTER and VANDUZEE knew or should have known that their supervision and discipline of Jail Deputies with respect to the use of force was constitutionally deficient.

217.     As detailed herein, by failing to remedy the constitutionally deficient training, supervision and discipline demonstrates BAXTER and VANDUZEE's deliberate indifference to the widespread use of excessive force in the Monroe County Jail by Jail Deputies, particularly where the force was used because the deputy felt disrespected but lacked any objective basis to believe the incarcerated person posed any threat of physical harm to the deputy or any other person.

218.     Further, when Plaintiff entered the Monroe County Jail in 2019, several Jail Deputies informed him that Captain Shellard was plotting to have him assaulted by other Jail Deputies in retaliation for a prior lawsuit that Mr. Williams had filed against Shellard.

219.     Mr. Williams attempted to write to the Court to inform the Court of the alleged plot to have him attacked, and to ask for help and/or protection, such as relocating him to a different facility.

220.     The Monroe County Jail reads all outgoing mail, and, upon information and belief, they read Mr. Williams' pleas to the Court to intervene to protect him against the alleged plot to have him attacked by Captain Shellard.

221.     Upon information and belief, Jail policy requires that BAXTER and VANDUZEE be informed of any allegations by an incarcerated person that a staff member has assaulted them or is planning to have them attacked by other incarcerated persons or deputies.

222.    Upon information and belief, BAXTER and VANDUZEE were informed of Mr. Williams' allegations that Captain Shellard was planning to have him attacked after the deputy who screened his outgoing mail to the Court read the allegations against Captain Shellard.

223.    Even though they were, upon information and belief, informed of the plot by Captain Shellard to have Mr. Williams attacked by other deputies, BAXTER and VANDUZEE failed to take any actions to stop and or prevent the assault.

224.    Plaintiff's injuries were a direct and proximate result of BAXTER and VANDUZEE failure to protect Mr. Williams.

225.    Accordingly, Plaintiff was harmed as a direct result of Defendants' unlawful conduct and is entitled to damages, injunctive relief, and reasonable attorney's fees and costs in an amount to be determined by the Court.

WHEREFORE and in light of the foregoing, Plaintiff demands judgment on all claims for relief:

a.    Empanel a jury;

b.    Award compensatory and punitive damages;

c.    The Plaintiff demands the foregoing relief jointly and severally against all of the defendants in an amount in to be determined by a jury as fair and reasonable, except that the punitive damages demands are, as a matter of law, not recoverable against a municipality and therefore are not made against the COUNTY;

d.    Award Plaintiff reasonable attorney's fees and costs, and interest pursuant to 42 U.S.C. § 1988; and

e.    Such other and further relief as the court may deem just and proper.

Dated: New York, New York  
February 22, 2024

Respectfully Submitted,

ROTH & ROTH, LLP.

~//s//~

_____

Elliot Dolby Shields  
Co-counsel for Plaintiff  
192 Lexington Avenue, Suite 802  
New York, New York 10024  
(212) 425-1020  
eshields@rothandrothlaw.com

Easton Thompson Kasperek Shiffrin LLP  
Rhian Jones  
Co-counsel for Plaintiff  
16 West Main Street, Suite 243  
Rochester, New York 14614  
Ph: (585) 423-8290  
rhiandudson@gmail.com